

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NOS. 2-07-322-CR
### 2-07-323-CR

KELLEY CAMACHO                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

Appellant Kelley Camacho appeals her two convictions for possession of four grams or more but less than 200 grams of methamphetamine.  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Background Facts

In March 2006, a confidential informant ("CI") working with the Denton County Sheriff's Office picked up Jackie Patterson and drove him to a 7-Eleven in Lewisville. When they arrived, Patterson met appellant, who had agreed to sell him a quarter ounce of methamphetamine. As the CI waited, Patterson climbed into appellant's car and rode with her to a trailer park in Flower Mound, where she obtained a quarter ounce of methamphetamine for him before returning him to the 7-Eleven. When the CI confirmed that Patterson had purchased methamphetamine, officers moved in, arresting Patterson and appellant.

Upon searching appellant, the officers found a glass pipe with methamphetamine residue in her apron. In her purse, they found a black zippered bag containing digital scales, plastic bags, marihuana, and methamphetamine. When the officers frisked Patterson, they found approximately eight grams—slightly more than a quarter ounce—of methamphetamine in his pockets.

In July, after her release on bond, appellant arranged another drug transaction in which she agreed to sell four grams of methamphetamine to the employer of a second confidential informant ("CI2").

Posing as the employer, an undercover officer ("UO") went with CI2 to appellant's apartment. Once inside, appellant directed UO and CI2 to the bedroom. UO showed appellant three hundred dollars in cash, and appellant motioned for him to lay it on a desk. UO watched as appellant weighed 4.6 grams of methamphetamine and set it on the desk. As UO picked up the drugs, officers entered the apartment, and arrested appellant. Appellant's teenage son, who was present during the arrest, then directed the officers to an additional 0.4 grams of methamphetamine in appellant's bedroom.

The State charged appellant in separate indictments for the March and July drug sales. Each indictment contained an enhancement paragraph alleging that appellant had a prior conviction for a felony drug offense. The two cases were consolidated for trial. A jury returned verdicts of guilty on each, and after hearing evidence on punishment, assessed thirty years' confinement for each conviction. The trial court sentenced appellant accordingly, ordering the sentences to run concurrently. Appellant brings fifteen points on appeal.

### III. Prior Conviction Evidence Admitted Before Enhancement Paragraphs Read

In three points, appellant seeks a reversal for a new punishment hearing because evidence of her prior conviction was admitted before the State read the enhancement paragraphs alleging that conviction to the jury.

3

In her first point, appellant claims that the trial court erred by letting the jury consider evidence of the prior conviction before the prosecutor read the enhancement paragraphs to the jury. Appellant, however, has forfeited this complaint. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.[2] When the State offered State's Exhibit 36 as evidence of appellant's prior conviction, appellant objected only that the exhibit had not "been tied to [her] by fingerprints or any other identifiers." We hold that this objection was insufficient to preserve appellant's claim that the trial court erred by allowing the jury to consider evidence of her prior conviction before the enhancement paragraphs were read. Accordingly, we overrule appellant's first point.[3]

Similarly, in her second and third points, appellant contends that the trial court erred by not excluding, or at least instructing the jury to disregard, all the testimony the State presented before the enhancement paragraphs were read.

---

[2] Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

[3] *See* Tex. R. App. P. 33.1(a)(1); *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); *Ridge v. State*, 855 S.W.2d 234, 235 (Tex. App.—Fort Worth 1993, no pet.).

The record shows, however, that appellant did not request that the trial court exclude or instruct the jury to disregard the testimony before the enhancement paragraphs were read.[4]  Consequently, appellant did not preserve these claims for our review.  We overrule appellant's second and third points.[5]

## IV.  Chemist's Testimony

In her fourth point, appellant claims that the trial court violated her rights under the Confrontation Clause by admitting testimony from one chemist about laboratory results obtained by another chemist who did not testify at appellant's trial.

The substances recovered during appellant's March and July arrests were analyzed at the Texas Department of Public Safety Laboratory in Garland.  DPS chemist Drew Fout personally analyzed the substances from the March arrest, but another chemist from the same lab analyzed the substances recovered in July.  Fout testified at appellant's trial, but the other chemist did not.

Fout explained that he and the nontestifying chemist had used the same methods to analyze the substances seized during the March and July arrests.

---

[4] *See Dill v. State,* 697 S.W.2d 702, 709 (Tex. App.—Corpus Christi 1985, pet. ref'd) (holding error preserved when defendant asked that evidence heard before the plea be removed from the jury's consideration).

[5] *See* Tex. R. App. P. 33.1(a)(1); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009).

He testified that all chemists at the Garland DPS lab are trained the same way and that part of his training had been devoted to observing the more experienced nontestifying chemist, who had worked at the DPS lab for twenty-five years.

He testified further, that, as an expert, he was trained to evaluate the work of other experts and then to draw his own conclusions. He had reviewed the nontestifying chemist's case notes and charts generated during her testing of the substances seized during appellant's July arrest before forming his own opinion about the results of her work. Based upon his review, he opined that the exhibits she analyzed—State's Exhibits 22, 26, 27, and 31—all contained methamphetamine. Further, he testified that the net weights of the exhibits were 3.93, 0.20, 1.39, and 0.35 grams, respectively.

Appellant objected to Fout's testimony about the methods the nontestifying chemist used and the weights of the exhibits. She also objected to the admission of the drug exhibits—State's Exhibits 22, 26, 27, and 31. Appellant concedes, however, that she did not object to Fout's testimony that the composition of the exhibits contained methamphetamine.

As a result of her failure to object to this evidence, her complaint that the trial court erred by admitting Fout's testimony that the exhibits contained

6

methamphetamine is not preserved for our review.[6]  Accordingly, we limit our analysis to Fout's testimony about the methods the nontestifying chemist employed; the trial court's admission of State's Exhibits 22, 26, 27, and 31; and Fout's testimony about the weights of the substances in those exhibits.

Appellant asserts that her inability to cross-examine the nontestifying chemist who performed the testing rather than Fout violated her right to confront witnesses under *Crawford v. Washington*.[7]  In *Crawford*, the United States Supreme Court held that admitting a statement made by a nontestifying declarant offends the Confrontation Clause of the Sixth Amendment if it was "testimonial" when made and the defendant lacked a prior opportunity for cross-examination.[8]  Thus, *Crawford* applies to a nontestifying declarant's out-of-court statements that are testimonial.

Fout's testimony about the methods used by the nontestifying chemist is not governed by *Crawford*, however, because no out-of-court statement was admitted through this part of his testimony.  Rather, the testimony was Fout's in-court statement based upon his own personal knowledge acquired from

[6] *See* Tex. R. App. P. 33.1(a)(1); *Melendez-Diaz v. Mass.*, 129 S. Ct. 2527, 2534 (2009) ("The right to confrontation may, of course, be waived, including by failure to object to the offending evidence. . .").

[7] 541 U.S. 36, 124 S. Ct. 1354 (2004).

[8] *Id*. at 68, 124 S. Ct. at 1374.

7

having trained and worked at the DPS laboratory. The Sixth Amendment concerns at issue in *Crawford*, therefore, do not apply to this portion of Fout's testimony.

Nor do those concerns apply to the baggies of controlled substances admitted as State's Exhibits 22, 26, 27, and 31 because *Crawford* applies only to "statements." A "statement" is defined by Texas Rule of Evidence 801(a) as "(1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression."[9] Similarly, Federal Rule of Evidence 801(a) defines a statement as an "(1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion."[10] Baggies of controlled substances are not oral or written verbal expressions, they are not oral or written assertions, and they are not nonverbal conduct; therefore, they are not statements. Accordingly, the trial court's admission of the exhibits did not implicate appellant's confrontation rights.

---

[9] Tex. R. Evid. 801(a).

[10] Fed. R. Evid. 801(a).

Turning to Fout's testimony about the *weights* of those exhibits, as determined out-of-court by the nontestifying expert,[11] we need not reach that issue because other evidence of the drugs' weights came in from other sources without objection. Thus, the admission of this part of Fout's testimony had no effect on appellant's conviction or her punishment. By the time Fout testified, the State had already presented, without objection, evidence that the amount appellant sold in July was at least four grams. Sergeant Jeff Davis testified that the plan for the undercover operation was to purchase four grams of methamphetamine from appellant. In addition, the UO testified that the deal negotiated with appellant was to purchase four grams for $300. Further, during a telephone conversation recorded between appellant and CI2, appellant told CI2 that she had four grams ready to sell for $300. The UO identified State's Exhibit 22 as the bag of methamphetamine that he had purchased from appellant. He testified that he personally witnessed her weighing the amount

_____

[11] Recently, the United States Supreme Court has held that a certificate of a state laboratory analyst stating that material seized by police and connected to a criminal defendant is cocaine of a certain quantity is "testimonial" evidence subject to the demands of the Confrontation Clause as set forth in *Crawford*. *Melendez-Diaz*, 129 S. Ct. at 2529. In *Melendez-Diaz*, in a prosecution for drug trafficking, the state had submitted three "certificates of analysis" showing the results of forensic testing performed on substances seized from the defendant. *Id* at 2531. The analyst or analysts who prepared the certificates did not testify at trial. *See id.*

he bought from her and that the scale displayed 4.6 grams. Also, he testified that, in addition to State's Exhibit 22, he seized from appellant's apartment baggies of methamphetamine that he identified as State's Exhibits 26, 27, and 31. Sergeant Davis testified that, after appellant's arrest, appellant's son pointed out a quantity of methamphetamine in appellant's bedroom weighing 0.4 grams, which the sergeant identified at trial as State's Exhibit 31. Thus, even without Fout's testimony, the State presented evidence showing that the amount was over four grams. We hold, therefore, that Fout's testimony as to the weight of the substances seized in July had no effect on the jury's deliberations.[12] Appellant's fourth point is overruled.

## V. Sufficiency of the Evidence

In her fifth, sixth, and fifteenth points, appellant asks us to review the sufficiency of the evidence without certain evidence she claims should have been excluded. In conducting sufficiency reviews in criminal cases, however, we consider all evidence whether or not properly admitted.[13]

---

[12] *See Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007); *Davis v. State*, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1344 (2007).

[13] *See Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999); *Johnson v. State*, 967 S.W.2d 410, 411 (Tex. Crim. App. 1998).

With regard to appellant's fifth and sixth points, the evidence was legally and factually sufficient to show that the quantity of methamphetamine that appellant sold to the UO was at least four grams. Fout testified that the amounts seized from appellant's apartment during the July arrests and admitted as State's Exhibits 22, 26, 27, and 31 had a combined weight of over five grams.[14] In addition, other evidence showed that the methamphetamine seized in July was at least four grams. The plan of the operation was to purchase four grams of methamphetamine from appellant. Appellant can be heard on a recorded telephone call telling CI2 that she had four grams ready to sell. The UO saw appellant weigh out 4.6 grams of methamphetamine and place it on the desk in her bedroom. Appellant's son pointed out to the arresting officers an additional 0.4 grams of methamphetamine in appellant's bedroom. We hold that the evidence was legally and factually sufficient to show that appellant possessed four or more grams. Points five and six are overruled.

In her fifteenth point, appellant claims that there is no evidence linking her to the March drug transaction. Appellant, however, ignores her confession, admitted as State's Exhibit 16, in which she stated:

---

[14] The total weight of the drugs recovered during the July arrest was 5.87 grams. State's Exhibit 22 weighed 3.93, State's Exhibit 26 weighed 0.20, State's Exhibit 27 weighed 1.39, and State's Exhibit 31 weighed 0.35 grams.

Jackie [Patterson] got in my car and we left to go and get the methamphetamine for [the CI]. I went over to Angie Lamb's trailer that is located . . . in Flower Mound, Texas to see if she had the quarter ounce of methamphetamine. When I got to Angie's she had about (1) ounce of methamphetamine, and she fronted me the 1/4 ounce of methamphetamine for Jackie. Angie was expecting me to bring her back $275.00 as payment for the methamphetamine.
. . . I put a little methamphetamine in a bag for me, and in a second bag for Jackie. I drove Jackie back to the 7-11 to meet with [the CI]. During the ride back to the 7-11[,] I gave Jackie the 1/4 ounce of methamphetamine to give to the [CI].

We hold that the evidence is both legally and factually sufficient to support appellant's conviction for the March drug sale. Point fifteen is overruled.

## VI. Appellant's Written Statement

In her eighth and ninth points, appellant claims that her written statement admitted as State's Exhibit 16 was involuntary and violated article 38.22 because warnings related to an indigent accused's rights to appointed counsel do not appear on its face as required by the code of criminal procedure. Appellant's objection at trial, however, was that the statement violated article 38.22 because it was an oral statement. Because her points on appeal do not comport with the objection raised at trial, we overrule appellant's eighth and ninth points.[15]

---

[15] *See Heidelberg*, 144 S.W.3d at 537; *Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 827 (1997); *Greenwood v. State*, 948 S.W.2d 542, 549–50 (Tex. App.—Fort Worth 1997, no pet.);

In her tenth point, appellant claims that the trial court erred by not instructing the jury to disregard her written statement if it found that appellant had not been given the warnings required by code of criminal procedure article 38.22, section 2. Appellant concedes, however, that she did not request such an instruction and that the trial court has no duty to give an instruction sua sponte. We hold, therefore, that the issue was not preserved, and consequently, the trial court was not required to instruct the jury to disregard the statement.[16] We overrule appellant's tenth point.

## VII. Effectiveness of Counsel

In her seventh and eleventh points, appellant alleges that her trial counsel provided ineffective assistance of counsel.

We apply a two-pronged test to ineffective assistance of counsel claims.[17] First, appellant must show that counsel's performance was deficient, which requires showing that counsel made such serious errors that he was not

---

*Bridges v. State*, No. 02-07-00069-CR, 2008 WL 4052959, at *1 (Tex. App.—Fort Worth Aug. 29, 2008, pet. ref'd) (mem. op., not designated for publication).

[16] *See Oursbourne v. State*, 259 S.W.3d 159, 176 (Tex. Crim. App. 2008).

[17] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

functioning as the "counsel" guaranteed by the Sixth Amendment.[18] Counsel's performance is deficient only if it fell below an objective standard of reasonableness measured by prevailing professional norms.[19] The record must be sufficiently developed to overcome a strong presumption that counsel provided reasonable assistance.[20] Our scrutiny of counsel's performance must be highly deferential, making every effort to eliminate the distorting effects of hindsight.[21]

Second, appellant must show that counsel's deficient performance prejudiced the defense; this requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.[22] Appellant must show that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.[23]

In a heading identifying her seventh point, appellant alleges that trial counsel was ineffective for failing to object to Fout's testimony that testing on

---

[18] *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

[19] *Id.* at 688–89, 104 S. Ct. at 2065.

[20] *Bone v. State,* 77 S.W.3d 828, 833 & n.13 (Tex. Crim. App. 2002); *Thompson,* 9 S.W.3d at 813–14.

[21] *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065.

[22] *Id.* at 687, 104 S. Ct. at 2064.

[23] *Id*. at 694, 104 S. Ct. at 2068.

the substance seized in July showed it to be methamphetamine. Apart from the heading, appellant's briefing devotes nothing more to the issue. Accordingly, her point is inadequately briefed.[24]

Moreover, even had appellant objected to Fout's testimony that the substance was methamphetamine, her objection would have been properly overruled under what appellant concedes is the current state of the law in Texas; that is, that one expert may testify as to his or her opinion based upon the findings of another expert.[25] Because the trial court properly would have overruled the objection appellant faults her counsel for not raising, she cannot show that counsel's performance was constitutionally deficient.[26] We overrule appellant's seventh point.

In her eleventh point, appellant urges that her trial counsel rendered ineffective assistance by failing to preserve points eight and nine, discussed above, and by failing to request a jury instruction on the voluntariness of State's Exhibit 16 as urged in point ten.

---

[24] *See* Tex. R. App. P. 38.1(i); *Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 1053 (2001); *Grotti v. State*, 209 S.W.3d 747, 778 (Tex. App.—Fort Worth 2006), *aff'd*, 273 S.W.3d 273 (Tex. Crim. App. 2008).

[25] *See Martinez v. State*, 22 S.W.3d 504, 508 (Tex. Crim. App. 2000).

[26] *See Strickland*, 466 U.S. at 687.

A claim of ineffective assistance of counsel must be firmly grounded in, and supported by, the record.[27] When the record is silent as to possible trial strategies employed by defense counsel, we will not speculate on the reasons for those strategies.[28]

There is a substantial risk of failure when a claim of ineffective assistance of counsel is brought on direct appeal.[29] "Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional."[30]

This case demonstrates the "inadequacies inherent in evaluating ineffective assistance claims on direct appeal."[31] Appellant did not file a motion for new trial to afford the trial court an opportunity to hold a hearing and inquire into the reasons for trial counsel's acts or omissions. Consequently, we cannot determine whether counsel's actions were grounded in sound trial strategy

---

[27] *Thompson,* 9 S.W.3d at 814; *Jackson v. State,* 973 S.W.2d 954, 955 (Tex. Crim. App. 1998).

[28] *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

[29] *Thompson,* 9 S.W.3d at 813.

[30] *Bone,* 77 S.W.3d at 833.

[31] *Patterson v. State,* 46 S.W.3d 294, 306 (Tex. App.—Fort Worth 2001, no pet.).

because the record is silent as to possible trial strategies, and we will not speculate on the reasons for those strategies.[32] Nor is this a case where the trial record alone is sufficient to support appellant's claim that counsel was ineffective.[33] Therefore, appellant has failed to meet the first prong of *Strickland.* We overrule appellant's eleventh point.

## VIII. Informants and Accomplices

In her twelfth and thirteenth points, appellant claims the trial court abused its discretion by not instructing the jury on accomplice and informant testimony, respectively. No accomplice or informant testified at appellant's trial. Therefore, points twelve and thirteen are overruled.

## IX. Recorded Telephone Conversation

In her fourteenth point, appellant claims that the trial court abused its discretion by admitting State's Exhibit 1, a recording of a telephone conversation between the CI and Jackie Patterson because the recording was hearsay. On the recording, the CI and Patterson can be heard discussing their plans for the CI to pick up Patterson and take him to appellant's place of employment.

---

[32] *See Jackson,* 877 S.W.2d at 771; *Patterson*, 46 S.W.3d at 306.

[33] *See Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 813.

A statement by a co-conspirator of a party during the course and in furtherance of the conspiracy that is offered against a party is not hearsay.[34] The record shows that Patterson and appellant had agreed to a drug transaction and that appellant delivered to Patterson a quarter ounce of methamphetamine. Patterson, therefore, was a party to the offense. His out-of-court statements made in furtherance of the conspiracy to commit the offense were, therefore, not hearsay.

As to the CI's statements admitted in State's Exhibit 1, our review of State's Exhibit 1 reveals that it recorded the CI discussing her plans with Patterson to pick him up and drop him off in Lewisville. Under the rules of evidence, a statement of a declarant's then existing plan is an exception to the hearsay rule.[35] We hold that the trial court did not abuse its discretion by overruling appellant's objections to State's Exhibit 1. Point fourteen is overruled.

---

[34] Tex. R. Evid. 801(e)(2)(E).

[35] Tex. R. Evid. 803(3).

## X. Conclusion

Having overruled all of appellant's points, we affirm the judgment.

PER CURIAM

PANEL:  CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 30, 2009